(b)  (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained    475
access to the Vessel by means other than secreting away in the goods and/or containers shipped    476
by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including    477
fines, shall be for the Owners' account and the Vessel shall be off hire.    478

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel    479
by means other than secreting away in the goods and/or containers shipped by the Charterers,    480
the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel    481
is released and at their expense put up bail to secure release of the Vessel.    482

42. <u>Smuggling</u>    483

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any    484
fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.    485

43. <u>Commissions</u>    486

~~A commission of ................ percent is payable by the Vessel and the Owners to ................~~    487
~~................................................................................................~~    488
~~................................................................................................~~    489
~~................................................................................................~~    490
~~on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter~~    491

44  <u>Address Commission</u>    492

~~An address commission of ................ percent is payable to ................~~    493
~~................................................................................................~~    494
~~................................................................................................~~    495
~~................................................on hire earned and paid under this Charter.~~    496

45  <u>Arbitration</u>    497

(a)  ~~NEW YORK~~    498
~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and~~    499
~~subject to U.S. Law:~~    500

~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their~~    501
decision or that of any two of them shall be final, and for the purpose of enforcing any award, this    502
agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with    503
shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of    504
~~Maritime Arbitrators Inc.~~    505

~~For disputes where the total amount claimed by either party does not exceed US $ ................ **~~    506
~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~    507
~~of Maritime Arbitrators Inc.~~    508

(b)  LONDON 509
All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree 510
forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business 511
in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, 512
one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No 513
award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as 514
above, unless objection to his action be taken before the award is made. Any dispute arising hereunder 515
shall be governed by English Law 516

~~For disputes where the total amount claimed by either party does not exceed US $ .................~~ ** 517
~~the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime~~ 518
~~Arbitrators Association.~~ 519

\* Delete para (a) or (b) as appropriate 520

\*\* Where no figure is supplied in the blank space this provision only shall be void but the other provisions 521
of this clause shall have full force and remain in effect. 522

If mutually agreed, clauses ..46..... to ....95......, both inclusive, as attached hereto are fully 523
incorporated in this Charter Party. 524

For and on behalf of
WESTERN BULK CARRIERS K/S

For and on behalf of
OCEAN BULK CARRIERS LIMITED
As agents only

C 56   Printed and sold by
       Witherby & Company Limited 32/36 Aylesbury Street
       London EC1R 0ET
       by authority of The Baltic and International Maritime Council
       (BIMCO) Copenhagen

| | |
|---|---|
| APPENDIX "A" | 525 |
| To Charter Party dated ................................................................................................. | 526 |
| Between ........................................................................................................... Owners | 527 |
| and ............................................................................................................. Charterers | 528 |
| Further details of the Vessel: | 529 |
| | 530 |

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 46: Hull and Machinery Insurance.
Owners on delivery to declare vessel's hull and machinery value. Owners to advise Charterers immediately of any alterations thereto, otherwise Owners to remain responsible for any/all consequences of such omission.
Hull and Machinery Value: US$ 15.2 million.

Clause 47: Grab Suitability.
The vessel's cranes to be suitable for mounting of grabs for loading and discharging operations.

Clause 48: Wing Tank Loading.
If vessel is equipped with bleeding wing tanks, Charterers to have the option of using same for any permissible cargo by giving Owners ample time for cleaning. Consequently such wing tanks to be properly maintained during the currency of this Charter Party.

Clause 49: Trading Exclusions.
Vessel to be employed in lawful trades for the carriage of lawful merchandise only between good and safe ports or places where vessel can safely lie always afloat within I.W.L. specifically excluding Russian Siberian ports, Cambodia, Iraq, Israel and Israeli controlled territories, Lebanon, Syria, Libya (including Gulf of Sidra/Sirte), Angola (including Cabinda), Ethiopia, Somalia, Zaire, Liberia, Cuba, Haiti, Belize, Nicaragua.

Charterers are not allowed to:
a) Send vessel for whatever purpose directly from Taiwan to mainland China, unless calling at an intermediate port not in Taiwan nor in mainland China.
b) Load/carry any cargo permitted under this Charter from mainland China directly to Taiwan even calling an intermediate port not in mainland China nor in Taiwan. However, notwithstanding the provision contained herein, Charterers have the option to send vessel from mainland China to Taiwan only in case of vessel having no cargo on board, but Charterers to undertake to have the vessel call at an intermediate port not in mainland China nor in Taiwan before arrival at any port in Taiwan.

In case of any breach by Charterers of any of the above, Charterers to be responsible for any/all consequences and/or liabilities resulting/arising therefore from and also for any/all losses/damage sustained by the Owners.

Clause 50: Australian Hold Ladders/Gear.
Australia and New Zealand are included in the trading areas under this Charter Party, and Owners undertake that, prior to delivery and throughout the currency of this Charter Party, the vessel complies with hold ladder construction and gear/equipment certification requirements as stipulated at any time in the respective ports.

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 51: Cargo Exclusions.
Livestock, arms, ammunition, explosives, asphalt, pitch in bulk, ammonium nitrate, calcium carbide, ferro silicon, soda ash, direct reduced iron lumps/pellets, acids, naphtha, tar, hides, bones, logs, shavings, salt, saltpetre, copra, sunflower seed expellers, fishmeal, scrap, motor blocks and turnings, metal borings and cuttings, creosoted goods, bulk borax, sulphur, motor spirit, nuclear and radioactive waste/materials/goods and its products/by-products, petroleum and its products, charcoal, petroleum coke, bulk cement, cotton, all injurious/ inflammable/dangerous goods/commodities as listed in latest IMO D.G. Code and/or any subsequent amendments/modifications thereof. Mineral sands from Australia always excluded.

Of the excluded cargoes, Charterers are permitted to load up to 3 cargoes per year out of cement, salt, green delayed petcoke, sulphur, and shredded scrap only, against protective clause.

In the event cement is loaded, further to the procedure for loading of this commodity and where Owners' protective clause to apply, Charterers to supply the vessel with jet wash system for cleaning of the vessel's decks and holds after discharge and pay a lumpsum of US$6,000.

Cement feeder holes/sockets:
Charterers have the option to arrange for sufficient cement feeder holes in vessel's hatchways in their time and at their expense, and this work always to be done to class surveyor's approval. Dimensions of holes/drawing always to be approved by class. All cutting and restoring of holes to be fully supervised/attached/approved by classification surveyor and always to be at Charterers' time and expense. Vessel has cement holes of 700 mm, two in each hatch.

Clause 52: Dangerous Cargo.
Charterers have the privilege of carrying dangerous cargoes, but these shall be loaded, stowed and carried strictly in accordance with the regulations of IMO.

Clause 53: Lime Washing.
In the event of salt (except for Chilean salt) being loaded, lime washing of holds to be for Charterers' account and in Charterers' time. See also Clauses 51 and 72 (k).

Clause 54: Weather Routing.
Charterers may supply "Oceanroutes" or "Fleetweather" advice to the Master, during voyages specified by the Charterers. The Master to comply with the reporting procedure of the routing service, but it is understood that final routing is always at Master's discretion. For the purposes of this Charter Party "good weather conditions" are

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 54: Continued
to be defined as weather conditions in wind speeds not exceeding Beaufort Force 4. Evidence of weather conditions to be taken from vessel's deck log and independent weather bureau reports. In the event of a consistent discrepancy between deck logs and independent weather bureau reports, the independent weather bureau reports to be taken as ruling.

Clause 55: Previous Trading/Blacklisting.
Owners warrant that vessel is not blacklisted by any Arab authorities.

Clause 56: Lightening/Topping Off.
Charterers have the right to consign vessel to safe places or anchorages where lightening or topping off customarily takes place, and Owners agree that the vessel shall engage in lightening or topping off operations at the places or anchorages referred to. Fendering of the vessel to be in accordance with Master's requirements, and to be supplied and paid for by the Charterers. However, any fendering equipment on board to be at the disposal of the Charterers, free of charge. See Clause 86.

Clause 57: Hold Cleanliness.
Vessel to arrive at the first loading port and/or inspection place with all holds/cargo carrying compartments clean, watertight, dry, odourless, free of flaking paint, rust and/or rust scale, residues of previous cargo(es) and all other deleterious substances, and ready in all respects to the satisfaction of surveyor and/or such other local authority or official as local regulations and/or Shippers and/or Charterers may require to load cargo as permitted under this Charter Party. If, on presentation for loading at any port(s) the vessel should fail to pass any of the above surveys, the vessel is to be placed off-hire until the surveys are passed with all expenses incurred as a result of the failure for Owners' account.

If some holds/cargo carrying compartments are not accepted, Charterers shall have the option of accepting the vessel with those which are accepted and in that case Charterers shall pay the hire proportionate to the number of holds/cargo carrying compartments which have passed survey(s). However, if thereafter there should be any delay resulting from non-acceptance of any hold/cargo carrying compartment, the vessel shall be fully off-hire until the loading programme can be resumed.

Clause 58: Deratisation Certificate.
Vessel to have valid deratisation certificate and/or equivalent fumigation certificates on board at time of delivery, the validity of which is to be maintained by Owners in their time and at their expense during the currency of this Charter Party.

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 59: Bunkering Privileges.
It is understood that the vessel has full bunkering privileges at all usual bunkering ports including U.S. ports and is not restricted due to previous trading.

Charterers have the privilege of bunkering the vessel prior to delivery of the vessel provided same does not interfere with Owners' operations, and any time lost and any extra expenses incurred to be for Charterers' account. Owners to have similar privilege prior to redelivery on same conditions. (See Clause 9).

Clause 60: Hire Payment.
Hire payment to be made to:
JP Morgan Chase Bank New York
SWIFT: CHASUS33
Account: Nordea Bank Finland plc, London Branch
SWIFT: NDEAGB2L
Account: Dorset Shipping
Account: 50314055
Notwithstanding anything contained herein to the contrary, if at any time during the currency of this Charter hire shall become due on or during a Saturday, Sunday or a national holiday, or outside normal office hours, or at any time which for reasons beyond their reasonable control prevents Charterers from effecting payment of hire on the due date, payment of hire may be made on the next banking day immediately following the date on which hire becomes due.

Where there is any failure to make hire payment on the due date because of an oversight or negligence or error or omission of Charterers' employees, bankers or agents or otherwise for any reason where there is absence of intention to fail to make payment as set out, Charterers shall be given by Owners two banking days notice to rectify the failure, where so rectified the payment shall stand as a punctual and regular payment.

Clause 61: Charter Hire Withholdings.
Charterers have the right to withhold from Charter hire during the period of this Charter such amounts due to them for off-hire, which so agreed by Owners including Owners' disbursements, but proper supporting statements to be sent to Owners promptly. Charterers have the right to withhold from last month's hire Owners' estimated advances and disbursements including any fines and any other amounts to be for Owners' account when effecting hire payments.

Clause 62: Husbandry Matters.
Charterers agree that their offices and/or agents will deliver crew mail free of charge and assist the Master over minor husbandry matters, deducting from hire payments the actual costs involved. For major ship's husbandry matters such as drydocking, cash to Master,

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 62: Continued
changes of major part of crew etc., Owners will make their own arrangements with agents.

Clause 63: Stevedore Accommodation and Equipment.
Charterers to have the right of placing stevedores on deck together with their cooking utensils if required, and vessel to supply them daily with their requirements of fresh water for washing, cooking and drinking purposes. Charterers also to have the right, if required, to put on board vacuators and/or oil for operating same and mechanical operators and to have the right to transport same between shore and vessel or vice versa whenever required, provided always in Charterers' time and at Charterers' expense.

Clause 64: Bulldozers and Equipment in Holds.
Charterers to have the right to use bulldozers, tractors and/or similar equipment in vessel's holds, as deemed necessary. Always provided not in excess of vessel's tank top strengths.

Clause 65: Deleted

Clause 66: Boycott.
In the event of loss of time due to strike, lock-out, labour stoppages or boycott of the vessel by shore labour, or arising from government restrictions by reason of vessel's flag or the terms and conditions under which the Master and/or Officers and/or crew are employed, or by reason of vessel's present ownership, or of previous trading of this vessel or of previous or present trading of any other vessel under same ownership, operation, management or control, payment of hire shall cease for the time thereby lost and Owners to pay losses occasioned thereby.

Clause 67: Arrest Clause.
Should the vessel and/or her Master and/or any of her Officers and crew and/or any person employed by Owners travelling on board the vessel be arrested during the currency of this Charter Party, at the suit of any person having or purporting to have a claim against or any interest in the vessel and/or said Master and/or Officers and crew and/or any person employed by Owners travelling on board the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as the result of such arrest or is delayed in any way due to the detention or restraint of the Master, Officers or crew etc., and the Owners shall reimburse to the Charterers any expenditure which they may incur under this Charter Party and the vessel to be off-hire for any time actually lost.

This Clause shall be inoperative should the arrest be caused through any omission of the Charterers and/or their employees or agents.

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 68: Fines.
Any fines imposed on the vessel, Owners, Master, Officers or members of the crew or on Charterers originating from Master, Officers or crew contravening local port and/or customs regulations, particularly as regards smuggling, to be for Owners' account and Charterers are not to be responsible for any consequences resulting from such offence.

Any time lost due to above circumstances to be for Owners' account and to be deducted from hire.

Clause 69: I.T.F.
The Owners of the vessel guarantee that the minimum terms and conditions of employment of the crew are now, or will be prior to presentation of the vessel for loading, and will remain for the period of the Charter Party, covered by an I.T.F. agreement or a bone fide trade union agreement acceptable to the I.T.F., failing which vessel to be off-hire for any time lost and any extra expenses to be for Owners' account.

Clause 70: Cargo Gear Compliance.
Vessel's cargo gear and all other equipment shall comply with the regulations of the countries in which the vessel will be employed, and Owners are to ensure that vessel is at all times in possession of valid and up-to-date certificates required to comply with such regulations.

If stevedores, longshoremen or other workmen are not permitted or refuse to work due to failure of Master and/or Owners and/or Owners' agents to comply with the aforementioned regulations, or because vessel is not in possession of such valid and up-to-date certificates of efficiency, then Charterers may suspend hire for the time thereby lost and Owners to pay all expenses incurred incidental to and resulting from such failure.

Clause 71: Charterers' Equipment.
The Master is to keep a record of all Charterers' gear, equipment, dunnage and/or stores supplied to the vessel and to maintain same in good condition. Such gear, equipment, dunnage and/or stores to be returned to Charterers prior to redelivery of the vessel to Owners, or if requested by Charterers, at any time during the period of the Charter, in like good order and condition as supplied (fair wear and tear excepted). Owners to make good any shortage and/or damage unaccounted for.

Clause 72: Vessel's Services.
The following services are included in the hire and shall be rendered by the Master, Officers and crew without Charterers paying any additionals:

a) Raising and lowering of cranes and/or gangways in preparation for loading and discharging

ADDITIONAL CLAUSES TO M.V. "LOCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 72: Continued
b) Opening and closing of hatches in connection with loading and discharging
c) Closing and opening of hatches in the event of weather which may adversely affect condition of cargo carried on board during loading and discharging
d) Supervision for loading and discharging and everything related hereto (tallying excluded)
e) Maintaining sufficient electric power on all cranes whilst loading and discharging
f) Shifting vessel during loading and discharging and shifting berth
g) Docking and undocking in connection with loading/discharging cargo or bunkering
h) Necessary assistance in vessel's bunkering operations
i) Officers and crew to shape up vessel's hatches and cranes, grabs and grab connecting devices, if any, as much as possible prior to arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations.
j) During self-loading or self-discharging, and if required by Charterers and provided local regulations permit, vessel's crew to assist in driving cranes, always provided time and other duties permit. Owners will also assist Charterers in this connection and further make sure that crew is capable of driving cranes. Charterers to pay USD 7.50 per hour per crew member for driving cranes, and during which time crane drivers from the crew to be deemed as Charterers' servants, although Owners to remain responsible for crew's neglect and/or if crew is not working in due diligence
k) Limewashing: vessel's crew to limewash vessel's holds if required by Charterers, and Charterers to pay USD250.00 per hold directly to the performing crew members. Charterers to supply materials for same.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the services to be rendered by Officers and crew in accordance with the maritime code of the country under whose flag the vessel sails, or in accordance with what is customary practice in the trade - See Clause 74.

Clause 73: Hold Cleaning.
Hold cleaning between voyages to be performed by crew, if required by Charterers and if permitted by local regulations, Charterers paying USD 600 per hold. Time used for such cleaning to count as time on hire.

Master/vessel/Owners are not to be held responsible should vessel fail to pass hold condition inspection/survey due to intermediate cleaning, and no loss of hire to accrue. Should a failure to pass inspection, however, be caused by insufficient appliances/equipment to clean from one permissible cargo to another, or bad condition of holds/coamings/hatches due to rust scale or by lacking or flaking

7

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 73: Continued
paint, vessel to be considered off-hire and all expenses incurred until vessel is again in an acceptable condition to be for Owners' account. See Clause 36.

Clause 74: Lashing Dunnage.
Notwithstanding Clause 72, vessel's crew to assist in lashing/unlashing/relashing, including erecting/removal of stanchions, if/when required by Charterers. Vessel's crew also to remove dunnage if/when required by Charterers.

For such work Charterers to pay directly to crew as follows:
USD 1,600    Top lashing (or pro rata)
USD 1,000    Place hog lashing (or pro rata)
USD 1,000    Remove hog lashing (or pro rata)
USD 1,000    Remove top lashing (or pro rata)
USD 1,000    Place wooden stanchions (or pro rata)
USD 1,000    To remove wooden stanchions (or pro rata)
USD 1,000    To remove catwalk
USD 1,000    For relashing total deckload (or pro rata)

Clause 75: Protective Clauses.
Clause Paramount, Owners' Lien Clause, U.S. Clause Paramount, Canadian Clause Paramount, C.S.U.K. Clause Paramount, wherever applicable, shall be deemed to form a part of this Charter Party and shall be contained in all Bills of Lading issued hereunder. In countries where none of the aforesaid clauses apply, the governing rules of the country of cargo origin or country of loading to apply. Baltime War Clause also to form part of this Charter Party and to be included in all Bills of Lading issued hereunder.

Clause 76: Financial Responsibility.
Vessel shall at all times have a valid certificate of Financial Responsibility under U.S. government regulations enabling her to use the navigable waters of the United States of America. Owners also undertake to comply with any law or regulation in force at any place to which the vessel may be ordered concerning oil pollution or other pollution.

Clause 77: P and I Coverage.
Owners to maintain full P and I entry during the Charter Party period and Charterers to have the benefit thereof as far as rules permit.

Clause 78: War Risk Insurance.
Premium for basic war risk insurance on hull and machinery and Officers/crew always to be for Owners' account. Any additional premium in respect of such risks solely arising from Charterers ordering the vessel to proceed to areas currently designated as excluded areas by vessel's war risk underwriters, to be for Charterers' account, however, not to exceed what would have been

8

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 78: Continued
quoted or charged if vessel was covered with Lloyd's of London.

If Owners have not covered basic war risk insurance, Timecharterers only to pay the differential of the amount as if they had done so and only against presentation of underwriters' original invoice.

Blocking and trapping and loss of hire insurance always to be for Owners' account. Charterers to remain responsible for extra war risk insurance if the vessel is ordered to proceed to a destination and/or via any area that is subsequently declared as a war risk by Owners' underwriters, or is an area where extra war risk premium is applicable.

Clause 79: Extra Insurance.
Any extra insurance/expenses by reason of vessel's class, age, flag, registry, ownership, Officers or crew to be entirely for Owners' account. Any extra insurance due trading pattern of the vessel to be for Charterers' account except for Owners' related matters.

Clause 80: Lay-Up (See also Clause 39).
Charterers to have the right to order the laying-up of the vessel at any time and for any period of time at a safe berth, and in the event of such lay-up, Owners will promptly take steps to effect all the savings in operating costs, including insurance, which may be possible and give prompt credit to the Charterers in respect of all such savings. At the request of the Charterers, at any time, the Owners shall furnish an estimate of the savings which would be possible in the event of a laying-up of the vessel for long periods only.

Should Charterers decide that, for reasons of economy, Officers and crew should be paid off, then the cost of repatriation and later, the cost of rejoining, including laying-up preparation and reactivation cost and any expenses related thereto, are to be for Charterers' account. Charterers to give sufficient notice of their intention in this respect to enable Owners to make necessary arrangements for decommissioning and re-commissioning. Lay-up site to be mutually agreed.

Clause 81: Release of Cargo Without Original Bills of Lading.
Notwithstanding the provisions of Clause 30, Master and Owners authorise Charterers, sub-Charterers or agents to sign Bills of Lading in accordance with Mate's or Tally Clerk's receipts endorsed by Chief Mate on board, for and on behalf of Master if so required by Charterers, who shall indemnify vessel and Owners from all consequences arising from Charterers, sub- Charterers or their agents signing Bills of Lading not incorporating remarks of Mate's and Tally Clerk's receipts. Charterers are authorised to issue Bills of lading in conformity with Mate's receipts/Tally Clerk's receipts only.

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 81: Continued
In the event original Bills of Lading are not available on vessel's arrival at discharge port, Owners agree to allow entire cargo to be discharged without delay in return for Charterers' signed single letter of indemnity in conformity with Owners' P and I Club wording, without bank signature.

Standard Letter of Indemnity to be given in return for delivering cargo without production of the original Bill of Lading

To: (Insert name of Owners)   (insert date)
The Owners of the (insert name of ship)
         (insert address)

Dear Sirs,
Ship:              (insert name of ship)
Voyage:            insert load and discharge ports as stated
                   in Bill of Lading)
Cargo:             (insert description of cargo)
Bill of Lading:    (insert identification number, date and place of issue)

The above cargo was shipped on the above ship by (insert name of shipper) and consigned to (insert name of consignee or party to whose order the Bill of Lading is made out, as appropriate) for delivery at the port of (insert name of discharge port stated in the Bill of Lading) but the Bill of Lading has not arrived and we, (insert name of party requesting delivery) hereby request you to deliver the said cargo to (insert name of party to whom delivery is to be made) at (insert place where delivery is to be made) without production of original Bill of Lading.

In consideration of your complying with the above request, we hereby agree as follows:

1. To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of delivering the cargo in accordance with our request.
2. In the event of any procedures being commenced against you or any of your servants or agents in connection with the delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend same.
3. If in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever) to provide on demand such bail or other security as may be required to prevent such arrest or detention or

10

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 81: Continued
to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original Bills of Lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original Bills of Lading to be delivered to you, whereupon our liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7. This indemnity shall be governed by and construed in accordance with English Law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully,
For and on behalf of
(insert name of requestor)
The Requestor

Signature.

Clause 82: Arbitration - Small Claims.
If the amount in dispute does not exceed the amount of USD 25,000.00 exclusive of any interest on the amount claimed, costs of the arbitration and legal expenses, if any, Owners and Charterers agree that the matter should be heard under the Small Claims Procedure 1989 Terms in accordance with LMAA rules. English Law to apply.

Clause 83: U.S.C.G. Clause.
Owners confirm that vessel is not listed on U.S.C.G. List due to:
a) Flag
b) Ownership
c) Classification
d) Vessel's boarding history
e) Outstanding items found by U.S.C.G. during earlier inspections.

In case vessel is detained by any U.S. authority due to above reasons or new incidents involving U.S. authorities, Owners are

11

<u>ADDITIONAL CLAUSES TO M.V. "LUCASTA"</u>
<u>CHARTER PARTY DATED 12TH JANUARY, 2004.</u>

<u>Clause 83: Continued</u>
responsible for any additional expenses involved in having cargo delivered to Receivers without delay.

<u>Clause 84: Gypsy Moth Clause.</u>
Owners guarantee that the vessel is not categorised as "high risk vessel" and/or "low risk vessel" defined by the Canadian and/or U.S. governments regarding Asian Gypsy Moth infested, when called upon at Charterers' request (such as Siberian ports) in which case such loss and damage to be for Charterers' account, is free of any infestation by Asian Gypsy Moth or its eggs.

Should the Owners fail to fulfill their guarantee as above, Owners shall indemnify Charterers from any loss or damage sustained by the Charterers and all consequences arising from/in connection with such failure, including but not limited to any delay, expenses, fines, cost of removal, of such moth or its eggs and/or even transshipment of cargo on board, regardless of whether or not the vessel would be banned from entering into or ordered to leave Canadian and/or U.S. waters/ports because of said failure.

<u>Clause 85: Holds on Redelivery.</u>
Holds on redelivery to be in about same condition as on delivery, fair wear and tear excepted. Alternatively Charterers have the option to redeliver the vessel with unclean holds paying total US$ 5,000 in lieu of cleaning, in which case any cleaning performed, howsoever directed, to be for Owners' time and account. Except dunnage disposal in the USA and Canadian ports.

<u>Clause 86: BIMCO Double Banking Clause.</u>
a) Charterers shall have the right, when and where it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transshipment, loading or discharging cargo and/or bunkering.
b) Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give Owners such advance notice as they reasonably can of the details of any such operation.
c) Without prejudice to the generality of Charterers' rights under (a) and (b), it is expressly agreed that the Master has right to refuse to allow the vessel to perform as provided in (a) and (b) if, in his reasonable opinion, it is not safe to do so.
d) Owners shall be entitled to insure any deductible under the vessel's hull policy and Charterers shall reimburse Owners for any additional premium(s) required by vessel's underwriters and/or the cost of insuring any deductible under vessel's hull policy.

12

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004

Clause 86: Continued
a) Charterers shall further indemnify Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost, including periods for repairs as a result of such operation. See Clause 56.

Clause 87: BIMCO Standard ISM Clause.
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by the failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for Owners' account.

Clause 88: Bimco Year 2000 Clause.
"Year 2000 conformity" shall mean that neither performance nor functionality of computer system, electronic or electromechanical or similar equipment will be affected by dates prior to or during the year 2000.

Without prejudice to their other rights, obligations' and defences under this Charter Party, including where applicable, Hague or Hague-Visby Rules, the Owners warrant that they will ensure year 2000 conformity in so far as this has a bearing on the performance of the Charter Party.

Clause 89: Entertainment/Victualling.
For entertainment, victualling, cables, USD 1,500 per month of 30 days or pro rata.

Clause 90: Inspections.
Charterers and/or their agents and/or surveyors are permitted to perform vessel's inspections at any time during the Charter and prior to delivery, with Owners/crew giving full co-operation.

Clause 91: Hose Testing.
Owners agree to hose testing of hatches prior to loading.

Clause 92: Bunkers on Delivery.
Bunkers on delivery about 500 mt IFO and about 17 mt MDO. Bunkers remaining on board on redelivery to be about same quantity as on delivery. Prices the same both ends US$183.50 per metric ton IFO 380 cst and US$307.50 per metric ton MDO.

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

Clause 93: Australian Water Ballast Management.
Vessel to comply with Australian Water Ballast Management guidelines for international shipping as laid down by AQIS with effect from 1st August 1998, and any amendments thereafter.

Clause 94: Welding Padeyes
Charterers' option to weld padeyes on deck/hatches and sockets for wooden stanchions, if not already fitted with same.

Clause 95: P&C Clause
All terms and conditions of this Charter Party to remain private and confidential by both parties.

*************

ADDITIONAL CLAUSES TO M.V. "LUCASTA"
CHARTER PARTY DATED 12TH JANUARY, 2004.

APPENDIX A

m.v. "Lucasta"
ex-"Bulk Orion"
single deck bulk carrier
Built December 1994
IMO no: 9082764

summer dwt:       45,708 mts on 11.62 mtrs
tropical fresh:   46,891 mts on 12.12 mtrs
fresh:            45,707 mts on 11.66 mtrs
winter:           44,504 mts on 11.38 mtrs
Call sign: MDAS4
Flag: British
Port: London
Class: NK
Grt / nrt:    26,059/14,880
Panama
grt / nrt:    26,059/21,672
Suez
grt / nrt:    26,809/24,193
Loa/bm/dth:   185.74/30.4/16.5
TPC:    49.6 mts on summer draft
Hatch covers hatch sizes: end folding type weather tight steel Hatch
covers: No. 1 :    20.0 X 15.3 mts
        No. 2-5 :  20.8 X 15.3 mts
Capacities        Grain       Bale
No. 1             365,920     353,683
No. 2             430,822     418,292
No. 3             414,284     402,308
No. 4             430,623     417,211
No. 5             378,665     370,779
Total      2,020,315  1,962,273
Tank top strengths: Homogenous load 13.73 mts/sq mt
Upper deck strength: 3.45 mts/sq mt except between hatch ends
Hatch cover strengths: No. 1 hatch 2.08
                       No. 2-5 hatch 1.75 mts/sq mt
Cargo hold ventilation : natural
Ballast capacity with no.3 hold full: 27,262 mts (100% cap)
Light ship: 7,473 mts
Deck gear: 4 cranes x 25 mts each swl
Max working radius of crane 22 mtrs
Auxiliary engines : 3 sets of Yanmar M200L-SN 660 PS
550 kva (440 kw) X a.c. 450 v X 60 Hz
Main engine : Mitsui-Man B&W 6S50MC (mark5)
            MCO: 9,750 PS X 120 RPM (7,171 kw)
CSO : 8,290 PS X 114 RPM (6,097 KW) 85% of MCO

15

<u>ADDITIONAL CLAUSES TO M.V. "LUCASTA"</u>
<u>CHARTER PARTY DATED 12TH JANUARY, 2004.</u>

Speed loaded abt 13.75 knots on 26 mt ifo 380 cst including auxiliary engines, no diesel at sea.
Speed in ballast abt 14.25 mt on 26 mt ifo 380 cst including auxiliary engines, no diesel at sea.
Above speed is always based on good weather conditions max Beaufort Force 4 and max sea state 3, with non adverse wind and or currents.
In port consumption idle abt 1.5 mt ifo and gear working abt 4 mt ifo both per 24 hrs.
Vessel burns additional mdo when manoeuvring in/out of port and in restricted waters.

Sat A : 1460647
Fax : 1460651
Sat C : 423590128 LUSA X

Vessel's constants maximum 250 mt and maximum unpumpable about 150 mt
Fresh water capacity about 390 mt.
Vessel can load full cargo in three alternate holds (ICAS are now discouraging this practice as unsafe).
Crane outreach from ship's side 6.8m
Owners confirm vessel is ITF ok, AHL fitted, ISM acredited, is fully suitable for Charterers' intended trade.
Charterers confirm vessel is a singledeck self-trimming bulkcarrier with no centerline bulkheads or any obstructions on decks or in holds interfering with loading/discharging operations and/or obstructions use of bulldozer/payloaders.
Vessel has a hydro jet wash machine on board.

All details 'about' without guarantee given in good faith.

<u>ADDENDUM NO. 1</u>
<u>M.V. "LUCASTA"/WBC KS. OSLO NORWAY</u>
<u>CHARTER PARTY DATED 12TH JANUARY, 2004.</u>
<u>CHARTER PARTY NO. 2.</u>

It is mutually agreed this day between Owners and Charterers, that Charterers have the option of 30 days more or less on the duration of this Charter. All other terms and conditions apply.

FOR OWNERS                                FOR CHARTERERS

For and on behalf of                      For and on behalf of
OCEAN BULK CARRIERS LIMITED               WESTERN BULK CARRIERS K/S
As agents only